```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

DANIEL A. GERACE, JR.,

                       Plaintiff,

                                                      07-CV-0028

                          v.                          **DECISION**
                                                    **and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____

## **INTRODUCTION**

    Plaintiff Daniel A. Gerace, Jr. ("Gerace" and/or "plaintiff"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. §401 et. seq.) claiming that the Commissioner of Social Security improperly denied his application for disability insurance benefits.[1] Specifically, Gerace alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by the substantial evidence contained in the record.

    The Commissioner moves for judgment on the pleadings on grounds that the decision of ALJ Douglas W. Abruzzo was correct, was supported by substantial evidence, and was made in accordance with applicable law. Gerace also moves for judgment on the pleadings and seeks reversal of the ALJ's decision, or, in the alternative, remand the action to the defendant for further administrative proceedings. For the reasons stated herein, the case is remanded to the Commissioner for further proceedings in accordance with this decision.

---

[1]This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated August 27, 2008.

**BACKGROUND**

I. **Procedural History**

On October 10, 2003, Gerace, then aged 34 years old, applied for Social Security disability benefits claiming that he became disabled on August 16, 2002 due to an injury to his lower back and left leg (Tr. 254-57). Gerace's application was initially denied, and thereafter, he requested an administrative hearing before an ALJ which took place on December 27, 2005 (Tr. 194). In a decision dated April 28, 2006, the ALJ found that although Gerace suffered from severe impairments, including low back pain and depression, plaintiff's impairments did not meet or equal a Listing (T. 23). He then determined that plaintiff retained the residual functional capacity to perform light exertional work that: requires no more than occasional stooping and crouching; avoids crawling and climbing ladders, ropes and scaffolds; avoids pushing and pulling with the lower extremity; avoids prolonged exposure to cold temperature extremes and extreme wetness and humidity; avoids exposure to unprotected heights; does not require exposure to moving machinery because of decreased agility and for sedentary work only; allows the option to sit, stand, and walk up to five steps and stretch up to five minutes an hour, for no more than one minute on each occasion (Tr. 28).

The ALJ also found that plaintiff could not do his past relevant work, but that he could perform other work in the economy, and therefore he was not disabled within the meaning of the Social Security Act. Id. Gerace's request for review of the ALJ's decision by the Appeals Council was denied on December 7, 2006, and thereafter

plaintiff filed this action.

## II. Factual Background

### A. Medical History

#### 1. Treating Physicians/Surgeons

Plaintiff was seen by Health Works WNY for complaints of low back pain after he was injured at work on August 15, 2002 (Tr. 376-77). An MRI showed small central and left paracentral disc protrusion at the L4-5 disc level with minimal stenosis and a tiny central disc protrusion at the L3-4 disc level with no canal or foraminal stenosis (Tr. 385). Plaintiff was evaluated by Dr. Naren Kansal in October 2002 and noted that plaintiff showed no paraspinal spasm or tenderness of the sacroliliac joint (Tr. 443-44). On June 18, 2003, Dr. Kansal performed plaintiff's first back surgery, which was a left L4-5 microdiskectomy (Tr. 409). Dr. Kansal noted that post-surgery, the plaintiff's nerve root was exiting nicely and freely. Id. In September 2003, plaintiff received a follow up MRI on his lumbar spine, which showed that plaintiff was status post left L4 laminectomy (Tr. 446-47). In addition, the MRI showed a broad based disc protusion at L4-5 with a thin mantle of surrounding enhancing scar tissue that caused moderate central narrowing and moderate left foramical narrowing. Id. In December 2003, Dr. Kansal stated that plaintiff had a significant abnormality in gait, in that he favored his left side (Tr. 424). Further, Dr. Kansal opined that plaintiff could stand and/or walk less than two hours per day, sit up to six hours per day, and was limited in his ability to push and/or pull (Tr. 425). Dr. Kansal concluded that plaintiff was 100% totally disabled. Id.

Plaintiff was evaluated by Dr. Cameron Huckell on March 23, 2004 (Tr. 100-03). He indicated that a March 2004 x-ray of the plaintiff's lumbar spine showed that the disc space was narrow between the L3 to S1 disc levels, which indicates degenerative disc disease. Id. Based on his evaluation and the September 2003 MRI of Gerace, Dr. Huckell opined that plaintiff was temporarily totally disabled. Id. Plaintiff continued to see Dr. Huckell and after a July 2004 MRI, the doctor reported that plaintiff's lumbar spine had some compression of the left L5 nerve root and some foramical stenosis affecting the L4 nerve root on the left (Tr. 93). Dr. Huckell recommended surgery and on April 18, 2005 Dr. Huckell performed a revision foraminotomy, decompression of L4 and L5 nerve root, with inferior laminectomy, L4 and superior laminectomy, and partial facetectomy L4-5 for lumbar spinal stenosis with bone spur (Tr. 89). Dr. Huckell opined that plaintiff was temporarily totally disabled for a period of at least three months during his post operative recovery (Tr. 84). Indeed, Dr. Huckell opined on several occasions throughout the relevant time period that the plaintiff was temporarily totally disabled because of his back condition (Tr. 84, 492, 528).

On February 26, 2006, Dr. Huckell reported that despite two lumbar spine surgeries, plaintiff continues to suffer from chronic lower back and leg pain (Tr. 214). Dr. Huckell stated that the plaintiff suffers severe pain that impairs his ability to maintain concentration to the point where it leaves him unable to adequately perform any work duties. Id.

### 2. Consulting Physicians

Plaintiff was also evaluated by a Social Security consulting physician, Dr. Steven Dina, in March 2003. (Tr. 395-97). Based on a single session with plaintiff, Dr. Dina reported that plaintiff's cervical and lumbar spines showed full range of motion (Tr. 396). The doctor also indicated that plaintiff was neurologically intact and had no muscle atrophy (Tr. 397). Although Dr. Dina noted that plaintiff had some decreased straight leg raising, he had an otherwise normal examination. Id. Dr. Dina opined that plaintiff had mild restriction to activities that involve repetitive bending, lifting, squatting, and lifting of medium weights on a repetitive basis. Id. In addition, plaintiff was examined by a neurosurgeon, Dr. Guy Corkill, in April 2003 (Tr. 398-401). Dr. Corkill reported that plaintiff had a positive straight leg raising test but no motor, reflex or sensory deficit (Tr. 400). Based on his examination, he opined that Gerace should not lift any weight greater than twenty pounds and should avoid activities such as repetitive lifting, bending, stooping, twisting, pushing and pulling (Tr. 398).

### B.   Non-Medical Evidence

Plaintiff worked as a stockhander, laborer, and commercial carrier from 1988 through 2002 (Tr. 322). He attended school through the tenth grade (Tr. 327). Plaintiff lives with his wife and two children, who are ages nine and seven (Tr. 122). He reported that he watched television, read, took care of his personal needs, remembered to take his medication, drove and managed his money (Tr. 339-43). Further, plaintiff noted that he picked up his children from the school bus,

prepared easy meals, occasionally went out to eat and could dust, mop and load a dishwasher (Tr. 140, 142, 144-45).

Based on the ALJ's first hypothetical question to the Vocational Expert ("VE"),[2] the VE opined that plaintiff could perform light work as a laminating machine off bearer or as a mail clerk (Tr. 171-172). The VE further testified that plaintiff could do sedentary work as a order clerk. Id. In addition, the VE stated that plaintiff could perform work as a brake linings coder. Id.

### III. Administrative Proceedings

#### A. The ALJ's Decision

The ALJ first found that plaintiff had not engaged in substantial gainful activity since he had filed his application and then concluded that while plaintiff's impairment was severe, it was not as severe as any impairment listed in Appendix 1, Subpart P to Regulation 4.[3] (Tr. 23). The ALJ further found that plaintiff, who is classified as a younger individual under 20 C.F.R. 404.1563, was not capable of his past relevant work. However, the ALJ noted that plaintiff's inconsistent statements in the medical records "seriously detract from

---

[2] The ALJ posed the following hypothetical to the VE: (1) assuming an individual of the same age, education, and work experience as plaintiff; (2) can perform no more than light work (involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds); (3) must avoid crawling and climbing ropes, ladders, scaffolds, and unprotected heights; (4) can occasionally stoop and crouch; (5) if performing sedentary occupations he must have a sit/stand/walk option that allows him to stretch for one minute five times each hour; (6) must avoid pushing and pulling with left lower extremity including foot pedals; (7) is limited to occasional pushing and pulling with the right lower extremity including foot pedals; (8) must avoid prolonged exposure to cold temperature extremes, extreme wetness, and moving machinery; and (9) is limited to simple, routine and repetitive tasks which are not performed in a production or quota based environment (Tr. 169-70).

[3] If a claimant has a "listed" impairment, he will be considered disabled without an additional assessment of vocational factors such as age, education, and work experience. If the claimant does not have a listed impairment, the Commissioner must consider whether the claimant still has the capacity to perform work. See, e.g., Bush v. Shalala, 94 F.3d 40, 45 (2d Cir.1996).

the [plaintiff's] credibility." (Tr. 27). The ALJ then determined that plaintiff was able to "perform a wide range of work activity at the light exertional level" and was not disabled under the Act (Tr. 31).

In making these findings, the ALJ concluded that the opinion of plaintiff's treating physician, Dr. Kansal was not entitled to controlling weight because it was inconsistent with Dr. Kansal's treatment notes (Tr. 28). Further, the ALJ found that the opinion of plaintiff's second treating surgeon, Dr. Huckell were not supported by the doctor's own physical examination of the plaintiff and of the opinions of other examining physicians that plaintiff can perform a reduced range of light or medium work or by the plaintiff's wide range of daily activities. Id. Accordingly, the opinions of both treating surgeons were afforded "minimal weight" by the ALJ. Id.

At the hearing, the ALJ came to the conclusion that plaintiff's continued pain was the result of scar tissue, which appear to be evident in a August 2005 MRI (Tr. Tr. 158-159; Tr. 533). However, the ALJ requested that Dr. Huckell either confirm or deny this conclusion (Tr. 177-178). Unfortunately, Dr. Huckell wanted $750 before he provided the medical statement to the plaintiff and this was beyond the plaintiff's means (Tr. 236). Thereafter, plaintiff's counsel drafted interrogatories to be posed to Dr. Huckell, which would either confirm or deny the ALJ's conclusion that plaintiff's pain was the result of scar tissue. Id. However, the ALJ refused to allow the interrogatories to be posed to Dr. Huckell (Tr. 237-238). Eventually, Dr. Huckell complied with plaintiff's request and signed a statement confirming that plaintiff's pain was caused by scar tissue as seen in plaintiff's

MRI (Tr. 214; 533). The ALJ refused to consider the signed statement by Dr. Huckell dated February 28, 2006, clarifying the basis for his opinions, even though the statement confirmed the ALJ's own suspicions as to why the plaintiff was suffering from so much pain (Tr. 158-159; 177-178; 237-238).

### B.    The Appeals Council Decision

Plaintiff sought review by the Appeals Council (Tr. 8). When doing so, plaintiff asserted that the ALJ failed to fully develop the record by refusing to consider evidence which confirmed the ALJ's own suspicions regarding the plaintiff's pain (Tr. 9). In addition, plaintiff argued that the ALJ erred by not re-contacting the plaintiff's treating sources and by substituting his own medical opinion for that of the plaintiff's treating physicians (Tr. 9-10). The Appeals Council denied plaintiff's request for review holding that the ALJ was not obligated to hold the record open indefinitely, nor was he obligated to obtain clarification of the opinions expressed by plaintiff's treating sources (Tr. 5).

## DISCUSSION

### I.    Jurisdiction and Scope of Review

When a claimant challenges the Social Security Administration's denial of benefits, the court may set aside the ALJ's decision only if it was based on legal error or is not supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.1998). Substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 401

(1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Matthews v. Leavitt, 452 F.3d 145, 152 n. 9 (2d Cir.2006). The substantial-evidence test applies not only to the Commissioner's factual findings but also to the inferences and conclusions of law to be drawn from such facts. See Caraballo ex rel. Cortes v. Apfel, 34 F.Supp.2d 208, 214 (S.D.N.Y.1999). To determine whether substantial evidence exists, the reviewing court must examine the entire record, including any contradictory evidence. See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.1999).

It is the province of the Social Security Administration, not the courts, to weigh the conflicting evidence in the record. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998). While the ALJ need not resolve every conflict in the record, see Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981), "the crucial factors in any determination must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.1984); cf. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (explaining that the Commissioner must give reasons for the particular disposition of a claim).

If the court finds a lack of substantial evidence for the Commissioner's findings or other legal error, it has two options. If there are gaps in the administrative record or the ALJ has applied an improper legal standard, the court will remand the case for further development of the evidence. See, e.g., Rosa v. Callahan, 168 F.3d 72,

(1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Matthews v. Leavitt, 452 F.3d 145, 152 n. 9 (2d Cir.2006). The substantial-evidence test applies not only to the Commissioner's factual findings but also to the inferences and conclusions of law to be drawn from such facts. See Caraballo ex rel. Cortes v. Apfel, 34 F.Supp.2d 208, 214 (S.D.N.Y.1999). To determine whether substantial evidence exists, the reviewing court must examine the entire record, including any contradictory evidence. See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.1999).

It is the province of the Social Security Administration, not the courts, to weigh the conflicting evidence in the record. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998). While the ALJ need not resolve every conflict in the record, see Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981), "the crucial factors in any determination must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.1984); cf. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (explaining that the Commissioner must give reasons for the particular disposition of a claim).

If the court finds a lack of substantial evidence for the Commissioner's findings or other legal error, it has two options. If there are gaps in the administrative record or the ALJ has applied an improper legal standard, the court will remand the case for further development of the evidence. See, e.g., Rosa v. Callahan, 168 F.3d 72,

82-83 (2d Cir.1999) (citing Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996)). If, however, the record provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. See Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980); see also Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004); Rosa, 168 F.3d at 83.

## II. Proof of Disability

To establish disability under the Social Security Act, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). The statute additionally requires that the claimant's impairment be

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

In making a determination as to a plaintiff's disability, the Commissioner is required to apply the five-step process set forth in 20 C.F.R. § 416.920. The Second Circuit has described this process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a

> "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience .... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

See Bush, 94 F.3d at 44-45 (citations omitted). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the last step, and thus must demonstrate the existence of jobs in the economy that the claimant can perform. See, e.g., Kamerling v. Massanari, 295 F.3d 206, 210 (2d Cir.2002). When employing this five-step analysis, the Commissioner must consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." See Brown, 174 F.3d at 62 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.1983)).

Finally, the Commissioner must give special consideration to the findings of a claimant's treating physician. A treating physician's opinion is controlling if it is "well supported by medical findings and not inconsistent with other substantial record evidence." See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000); see 20 C.F.R. § 416.927(d)(2). The more consistent a treating physician's opinion is with other evidence in the record, the more weight it will be accorded. See §

416.927(d)(4).

Applying the required five-step framework to plaintiff, the ALJ found that (1) plaintiff was not engaged in substantial gainful activity; (2) plaintiff had a severe medical impairment; (3) his impairment was not one of the listed impairments; (4) plaintiff was not capable of his past relevant work; and (5) he retained the residual functional capacity to engage in "a wide range of work activity at the light exertional level." (Tr. 31). The ALJ concluded that the residual functional capacity, in combination with plaintiff's age and education through the tenth grade, dictated that he was "not disabled." Id.

Plaintiff launches several challenges to the ALJ's conclusion that he was not entitled to benefits. He argues that the disability determination is contrary to substantial evidence in the record because the ALJ ignored or misconstrued substantial medical evidence, including the cumulative weight of the medical evidence, specifically the assessment of his treating physicians (surgeons). Plaintiff also argues that the ALJ did not fully and adequately develop the administrative record and that he misapplied the treating-physician rule.

### III. Treating-Physician Rule

The key to the ALJ's recommended denial of plaintiff's benefits application was his determination that plaintiff was capable of performing work at the light exertional level with no more than occasional stooping and crouching and no crawling and climbing ladders, ropes and scaffolds (Tr. 28). To reach that result, the ALJ was effectively required to reject the opinion of plaintiff's treating physician, Dr. Kansal, who in substance found that plaintiff could not

do such work because he had marked limitations in that he was not capable of standing and/or walking for up to two hours a day and that plaintiff was 100% disabled. In addition, Dr. Huckell opined on several occasions that plaintiff was temporarily totally disabled due to his back impairment (Tr. 84).

Under the Commissioner's regulations, the opinion of a claimant's treating physician is generally given "more weight." See 20 C.F.R. § 416.927(d)(2); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir.1993) (explaining that the regulations give deference to treating physicians' opinions because "opinions based on a patient-physician relationship are more reliable than opinions based ... solely on an examination for purposes of the disability proceedings themselves"). In addition, if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given controlling weight. § 416.927(d)(2). When the treating physician's opinion is not given controlling weight, the ALJ must consider a set of factors in determining the weight that the opinion should be given. These factors are (1) the duration of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) how much the physician has supported the opinion with evidence and explanation, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the physician, and (6) other factors tending to support or contradict the opinion, such as the physician's familiarity with the claimant's case record. §416.927(d)(2)-(6); see also Shaw, 221

F.3d at 134 (citing Clark, 143 F.3d at 118). Finally, the ALJ cannot "substitute his own expertise or view of the medical proof for the treating physician's opinion." See Shaw, 221 F.3d at 134.

The ALJ did not give controlling weight to Dr. Kansal and Dr. Huckell's opinions, and instead gave them "minimal weight." In doing so, the ALJ noted that Dr. Kansal's opinion was inconsistent with his treatment notes (Tr. 28). In addition, the ALJ stated that the opinion Dr. Huckell was not supported by the surgeon's own physical examination of the plaintiff and of the opinions of other examining physicians that plaintiff can perform a reduced range of light or medium work or by the plaintiff's wide range of daily activities. Id. In assessing both physicians' opinions, the ALJ failed to properly apply the treating-physician rule. Under that rule, the ALJ should have focused on whether Dr. Kansal's and Dr. Huckell's opinions were consistent with "substantial evidence" in plaintiff's case record to determine whether or not the opinion was entitled to controlling weight. 20 C.F.R. § 416.927(d)(2). The record indicates that in December 2003, Dr. Kansal stated that plaintiff had a significant abnormality in gait, in that he favored his left side (Tr. 424). Further, Dr. Kansal stated that the maximum amount of time that the plaintiff could stand and/or walk was less than 2 hours per day (Tr. 425). Dr. Kansal's assessment concluded with his opinion that plaintiff is 100% totally disabled. Id. Aside from his numerous opinions that plaintiff is temporarily totally disabled, Dr. Huckell signed a statement dated February 28, 2006, wherein he explains that despite two lumbar spine surgeries, plaintiff continues to suffer from chronic lower back and leg pain (Tr. 214). Dr.

Huckell further notes that plaintiff's "complaints are consistent with and caused by the medical findings of record, including the <u>existence of scar tissue which is evident from his August 2, 2005 MRI</u>." <u>Id.</u> (emphasis added). It is Dr. Huckell's professional medical opinion that plaintiff suffers from severe pain that it impairs his ability to maintain concentration to the point where it leaves him unable to adequately perform any work duties. <u>Id.</u>

There is also ample evidence, both medical and non-medical, that plaintiff suffers from constant lower back pain that travels down his left leg and that his pain has increased since his last surgery (Tr. 132-134). Plaintiff testified that his back pain keeps him from sleeping at night and that he has to sleep and/or lay down with his left leg elevated for about seven hours a day to relieve his pain (Tr. 138-139). He further testified that he is not able to sleep in the same bed as his wife because the couch is more comfortable on his back (Tr. 152). Moreover, plaintiff testified that activities such as vacuuming or mopping cause him sever pain and he has to stop and lay down after about ten minutes (Tr. 144). Significantly, the ALJ appears to have disregarded this evidence in ultimately determining that Dr. Kansal and Dr. Huckell's opinions were not entitled to controlling weight.

Affording more weight in this instance to the opinions of Dr. Dina and Dr. Corkill was improper under the treating-physician rule. Generally under the rule, consulting physicians' opinions are entitled to only limited weight, while treating physicians' opinions are entitled to greater weight. <u>See</u> <u>Santiago v. Barnhart</u>, 441 F.Supp.2d 620, 629 (S.D.N.Y.2006) (rule "recognizes that a physician who has a

long history with a patient is better positioned to evaluate patient's disability than a doctor who observes the patient once for the purposes of a disability hearing[.]") Further, as discussed below, to the extent the ALJ found that Dr. Huckell's opinion was insufficiently explained or needed clarification, the ALJ was bound to seek more information from Dr. Huckell. See Rivas v. Barnhart, 2005 WL 183139, at *23 (S.D.N.Y.2005).

### IV. Duty to Develop the Record

The ALJ has a duty to affirmatively develop the administrative record. 20 C.F.R. § 416.912(d); see also Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999). This duty exists even where, as here, the plaintiff is represented by an attorney. See Tejada, 167 F.3d at 774. The Secretary's regulations indicate that the duty to develop the record includes an obligation to clarify any perceived inconsistencies in the report of a treating physician: "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved ...." § 416.912(e)(1). Thus, if a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician before dismissing the opinion. See, e.g., Rosa, 168 F.3d at 79 ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") (citation omitted); Clark, 143 F.3d at 118; see generally Schaal, 134

F.3d at 505.

In this case, the ALJ failed to properly develop the record. Although the ALJ encouraged claimant's attorney to obtain clarification from Dr. Huckell regarding the cause of plaintiff's continuing pain in his lower back, he denied admission of Dr. Huckell's statement when finally presented to him (Tr. 239). Had the ALJ considered this additional information from Dr. Huckell it could have potentially resolved any doubts from the AlJ's mind.[4] By determining that Dr. Huckell's opinions and findings were not entitled to controlling weight - particularly where he asked for clarification of Dr. Huckell's previous opinion concerning the severity of claimant's pain - the ALJ failed to properly develop the administrative record and thereby committed legal error. See Rosa, 168 F.3d at 80. For the reasons noted, the decision of the Commissioner cannot stand. When the administrative record is incomplete or an ALJ has applied an improper legal standard, remand is appropriate. See Rosa, 168 F.3d at 82-83. The Commissioner argues against remand, contending that the ALJ's decision was supported by substantial evidence. Even if this Court were to agree with that assertion, affirmance would not be justified. Where the ALJ

---

[4]During the course of the testimony, the ALJ questioned the claimant concerning his continued complaints of pain. The ALJ suggested that perhaps scar tissue from the surgeries causes an impingement upon a nerve root which, of course, would explain his pain. "Sometimes that scar tissue just wraps around that nerve root and grabs a hold of it. Okay. Which is why I am wondering if you have had any MRIs after that one either in August or September. I am showing a September but I think that may be a doctor's comment regarding the August MRI." (Tr. 158.) He then explains that he has back problems and so does his wife and that the claimant's continuing pain may be the result of scar tissue from surgery. The ALJ then states, "You may want to get the doc that did the surgery to give us a medical explanation of what that MRI means and, you know, whether there is any hope that there is going to be some improvement. I don't know instantaneously but like in the next year or so. Attorney: I will ask him for an explanation and a prognosis, Sir. The ALJ: Yeah. Okay. Can you try and get that to me within 15 days. (Tr. 178.) Dr. Huckell's opinion dated February 28, 2006 was sent to the ALJ by claimant's attorney on March 9, 2006 and was not considered by Judge Abruzzo. The ALJ issued his decision denying claimant's application on April 28, 2006. The ALJ committed error in not considering this opinion.

has failed to consider evidence which he requested be submitted to him post-hearing, the failure to accept and consider that evidence would deprive the claimant of the right to have his disability determination made according to the correct legal principles. See Schaal, 134 F.3d at 504 (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987)).

I find it troubling that in the Order Denying Admission of Dr. Huckell's post-hearing statement the ALJ gratuitously stated "Needless to say Dr. Huckell's statement (drafted by claimant's attorney) is neither material nor relevant since on its face it has lured Dr. Huckell into making statements far beyond his medical expertise" and that "claimant's attorney evidently requires a reminder of their professional duty of candor toward the tribunal before which they practice." (Tr. 239). Also, in the ALJ's "Order Denying Further Post Hearing Development" dated February 16, 2006, the ALJ noted, "The undersigned is also mindful that the State of New York permits persons alleging medical disability to receive public assistance until their Social Security case is adjudicated. Of course, it may be purely coincidental that an attorney fee tends to increase as the amount of past due benefits continues to accrue in a Social Security disability case. . . . It's difficult to escape the conclusion that [this] case has been deliberately drawn out by legal maneuvering.  While claimant has been given every conceivable benefit of the doubt, enough is eventually enough." (Tr. 238.)

Plaintiff's attorney addressed his concerns to the Appeals Council by stating ". . . given the post-hearing developments in this case, that if a remand is granted, the case should be remanded to a new ALJ

. . . because the ALJ through his actions subsequent to the December 27, 2005 hearing has demonstrated inappropriate hostility towards this client and his representative." (Tr. 10.) There is nothing in the record before this Court concerning that assertion except for the ALJ's orders denying admission of Dr. Huckell's statement. (Tr. 238-239.) I am confident on remand, that the ALJ will carefully consider Dr. Huckell's February 28, 2006 statement along with other evidence presented particularly in view of the fact that he had raised this question during the course of the hearing and granted plaintiff's attorney 15 days to obtain the supplemental information. It's not the place of District Court to speculate what took place post-hearing between the plaintiff and the ALJ but to consider only the evidence in the record. I am confident that the ALJ will fulfill his legal duty to adequately develop the record and to consider the entire record in accordance with his duty under 20 C.F.R. § 404.1520(a)(3).

Accordingly, the case is remanded to the Commissioner for further development of the record in accordance with this decision. The defendant's motion for judgment on the pleadings is denied. The claimant's motion for judgment on the pleadings is granted to the extent that the case is remanded to the Commissioner for further development of the record.

## **CONCLUSION**

For the reasons stated herein, the case is remanded for further development of the record in accordance with this decision.

**ALL OF THE ABOVE IS SO ORDERED.**

```
                           s/Michael A. Telesca
                          MICHAEL A. TELESCA
                      United States District Judge
```

Dated:    Rochester, New York
          September 19, 2008